SPEARS v. POLK.—69 S. W. (2d) 239.

Western Section.   December 22, 1933.

Petition for Certiorari denied by Supreme Court, March 10, 1934.

Jas. F. Bickers, L. R. Featherstone, and Frank Berry, all of Memphis, for appellant.

Holmes, Canale, Loch & Glankler, of Memphis, for appellee.

SENTER, J.   This is a suit by complainant, Harry Spears, a practicing attorney at the Memphis, Tennessee, bar, to recover compensation for services alleged to have been rendered to the defendant, O. B. Polk, in October and November, 1929. The defendant, by its answer, admits that he consulted complainant with reference to a probable receivership proceeding to be instituted in United States District Court in South Carolina against the Galloway-Pease Lumber Company of Sumter, South Carolina, of which company the defendant was a creditor for a considerable sum, and also owned at the time about $20,000 of the stock of the Galloway-Pease Lumber Company, and also held a considerable block of the stock as collateral security for a note. The defendant denies in his answer that he is indebted to the complainant for any amount growing out of said matter, but states that there was an understanding and agreement between the parties that, if it should be deemed expedient to have a receivership proceeding instituted, and a friendly receiver to defend and could be appointed, complainant would receive his compensation, if any, as the attorney for the receiver, and defendant to pay the expenses of a trip to be made by complainant and defendant to Sumter, South Carolina, and return, for the purpose of investigating and determining the expediency of filing the suit; that, after reaching Sumter, South Carolina, complainant decided that it was not expedient to institute the receivership, and the receivership suit was never instituted.

At the hearing of the cause, the chancellor found the facts as contended for by the defendant, and under the facts as found by the chancellor the bill was dismissed at the cost of complainant. From this decree complainant has appealed to this court, and has asssigned errors.

The facts material to be considered may be summarized as follows: The Galloway-Pease Lumber Company was a corporation capitalized at about $140,000; the defendant owned $20,000 of the capital stock, and also held $28,000 of the capital stock as collateral security for a loan to Pease, of the lumber company, in the sum of $29,000. In addition, defendant under a contract had obtained loans on his indorsement for the company to about the amount of $40,000. He was treasurer of the company and was receiving a salary of $500 per month.

It appears that the company had a timber or logging contract with the Brooklyn Cooperage Company, and was at that time heavily indebted to the Brooklyn Cooperage Company for logs. The company was not meeting its obligations to the Brooklyn Cooperage Company promptly. It also appears that defendant and the Brooklyn Cooperage Company were the principal creditors of the Galloway-Pease Lumber Company.

The defendant became dissatisfied with the management of the company, and seemed to have been of the impression that the president of the company and the president's son, who had the active management of the business, were receiving too much salary, and also making unnecessary and expensive repairs, additions, and extensions, which complainant deemed inexpedient considering the financial condition of the company. In this situation complainant first consulted Mr. Marion Evans, of the law firm of Sively, Evans & McCadden, with reference to applying for a receivership, and was advised by Mr. Evans that a receivership would lie under the facts given to Mr. Evans. It also appears that complainant, Spears, had at one time been the law partner of Mr. Thomas Boyle, the uncle of complainant. Their offices adjoined in the same building. Through this association there had come to be a friendship between complainant and defendant of several years' standing. Mr. Spears had previously represented the defendant, Polk, in some legal matters, although it appears that Mr. Polk usually consulted Mr. Marion Evans with reference to his legal matters. It also appears that Mr. Polk mentioned to Mr. Spears his business affairs with the Galloway-Pease Lumber Company, at Sumter, South Carolina, and his desire to have a receivership proceeding instituted if he could be assured that a receiver favorable to him could be appointed. It appears that he was somewhat apprehensive that, in the event of a receivership proceeding,

the Brooklyn Cooperage Company might succeed in getting a receiver appointed that would be especially concerned about having the Brooklyn Cooperage Company's indebtedness taken care of, and that this might result in Polk sustaining losses; but, in the event he could procure a receiver of his own selection, that both of these large creditors could better be taken care of, and especially since the indebtedness to the Brooklyn Cooperage Company would take priority in the assets. While it does not definitely appear from the record that in consulting Mr. Spears defendant was actuated by the thought that, because Mr. Spears was a Republican in politics, and was personally acquainted with certain of the federal court officials, he could obtain better consideration in procuring a favorable receiver, there is some evidence in the record that this was probably in the mind of both Mr. Spears and Mr. Polk.

The chancellor held, and in which holding we concur, that in making the trip to Sumter, South Carolina, the trip was made with the view of determining whether or not a receivership should be applied for, and that Mr. Polk agreed to pay the expenses of the trip. The chancellor further held that there was an agreement and understanding between Mr. Polk and Mr. Spears that, outside of the expenses of the trip, Mr. Spears' compensation for legal services would depend on a receivership proceeding instituted in the United States District Court of South Carolina, and Mr. Spears' appointment as the attorney, or one of the attorneys, for the receiver. The burden of proving this agreement was on the defendant, as found by the chancellor, since Mr. Spears denied that it was the agreement between the parties. On the subject of this agreement Mr. Polk was corroborated in his statement by the evidence of Mr. Edward L. Page, who testified that he was present and heard the conversation between Polk and Spears, and that it was the express understanding or agreement between Polk and Spears that any compensation outside of the expenses of the trip to Sumter, South Carolina, to be paid to Spears for legal services in connection with the matter would depend on whether a receiver was appointed, and that Spears be retained as one of the attorneys for the receiver, and that Polk was not otherwise obligated to Spears.

Polk and Spears made the trip to Sumter, South Carolina, where the lumber plant of the Galloway-Pease Lumber Company was located, arriving there on Thanksgiving morning. While Polk and Spears were at breakfast, Polk suggested that Spears go to Columbia, South Carolina, that morning, a distance of about forty miles, to make further investigation and to also consider the matter of selecting an attorney at Columbia to be associated with him in the event it was decided to file a bill applying for a receiver in the federal court. Spears left

immediately for Columbia, South Carolina. The following day Spears received a telegram that his brother had died in Kansas City. In the meantime Mr. Polk had telephoned Mr. Spears that he had decided not to seek the appointment of a receiver, and that Spears could return home. When Spears received the telegram announcing the death of his brother, he called Mr. Polk and told him that he was drawing on him for $25, explaining that his brother had died and that he was desirous of proceeding on to Kansas City without stopping in Memphis. Mr. Polk then advised Mr. Spears that he would not pay the draft. Mr. Spears does not deny that he called on Mr. Polk to honor the draft for $25, although he does not specifically admit that he made that request. He does admit, however, that he did call Mr. Polk on the long-distance telephone at Sumter with reference to his going to Kansas City on account of the death of his brother. Mr. Polk testified positively that Mr. Spears did, in the telephone conversation, request him to honor a draft for $25 for the purpose of enabling him to go directly to Kansas without stopping in Memphis, and that he declined to do so. He testified further on that subject that in the telephone conversation he informed Spears that he had already given him the expense money that he agreed to pay for his return to Memphis, and that he did not owe him anything more. Mr. Spears denies that Mr. Polk told him that he did not owe him anything more, and states that, if he had so informed him, he would have promptly instituted suit to recover the value of legal services already rendered. One of the significant facts in the record is that, although both Polk and Spears lived in Memphis, and frequently met on the streets in Memphis, and at restaurants, Mr. Spears did not make any request or demand upon Mr. Polk for any fee in connection with this matter for a period of about two years after the alleged services had been rendered. It is true that Mr. Spears explained this on the theory that he did not know until about the time he made the request for the payment of the fee that the idea of filing the receivership bill had been finally abandoned, or that Mr. Polk had satisfactorily adjusted his differences with the Galloway-Pease Lumber Company and the Brooklyn Cooperage Company.

However this may be, we think it is shown by a preponderance of the evidence that Mr. Polk did not promise to pay any fee to Mr. Spears for legal services in connection with the investigation of the question of a receivership. We are further of the opinion that it appears by a preponderance of the evidence that it was agreed between Spears and Polk that Polk would pay the expenses to South Carolina to make the investigation, and to finally determine if he desired to institute a suit for the appointment of a receiver, and, if so, Spears to receive his compensation by being appointed one of

the attorneys for the receiver, and that Polk was not to pay any attorney's fee to Spears personally. Polk so testifies, and he is corroborated in his statement by the unequivocal evidence of Mr. Page on this subject, as well as by all the circumstances, including the long delay in making any mention of compensation to Polk, and also by the refusal of Mr. Polk to advance or to pay to him the $25 on the draft.

█ █ However, by certain of the assignments of error it is contended by appellant that, even though the agreement was as contended for by the defendant, complainant would be entitled to reasonable compensation for the services rendered by him to the defendant, on the theory that he was ready and willing to perform his part of the contract by instituting the receivership suit, and that, after he had rendered the service of investigating the law of the case and the rights of Polk to a receivership, and the investigation made at Columbia, South Carolina, Polk abandoned the institution of the proceeding, and hence deprived complainant of the benefit of the agreement, or whatever benefit would accrue to complainant by reason of the agreement.

In support of this contention complainant relies upon the rule announced in 6 C. J., p. 745, sec. 321, wherein it is stated:

"Since ordinarily an agreement for a contingent fee does not give the attorney any interest in the subject matter of the litigation, any disposition of the case the client chooses to make is binding on the attorney, . . . and, if the party dismisses a suit without receiving any consideration, the attorney is entitled to nothing under the contract, his remedy being an action for damages or an action upon a quantum meruit for the value of the services actually rendered."

We think it well settled that, where an attorney is employed to institute a suit on a contingent fee, and renders legal services in connection with the contract of employment, and the client, without the consent of the attorney, abandons the suit or makes a settlement thereof, nothing more appearing, the attorney is entitled to recover the reasonable value of the services rendered on a quantum meruit. 6 C. J., 745, sec. 321; In re Snider, 190 N. Y., 66, 82 N. E., 742, 14 L. R. A. (N. S.), 1101, 123 Am. St. Rep., 533, 13 Ann. Cas., 441; Jackson v. Stearns, 48 Or., 25, 84 P., 798, 5 L. R. A. (N. S.), 390; Gurley v. City of New Orleans, 41 La. Ann., 75, 5 So., 659; Polsley v. Anderson, 7 W. Va., 202, 23 Am. Rep., 613.

However, in all the cases that we have examined on this question, there was an employment for legal services to be rendered in the contemplated suit and the attorney's fee to be contingent on the amount of the recovery, and where there was no limitation upon the rights of the attorney to a contingent fee. In the present case it is not strictly a contingent fee contract as this term is usually under-

stood. In this case it appears that there was a distinct understanding and agreement that the defendant only desired a receiver appointed in the event he himself, or some one favorable to him, could be appointed, and it was otherwise desirable. The trip was made to South Carolina for the purpose of determining, first, if the receivership was desirable, and, if so, a suit for that purpose to be instituted. When defendant reached Sumter, South Carolina, and made a personal investigation with the officers of the company, he decided that it was not expedient to apply for a receivership, and promptly called Mr. Spears at Columbia, South Carolina, and so advised him.

This is one of the conditions or contingencies upon which complainant agreed to render the service of making whatever investigation he did make prior to the trip to South Carolina. We concur in the conclusion reached by the chancellor that whatever service was rendered by complainant to the defendant, or whatever investigation he made, was with the understanding that, if for any reason the receivership should not be asked for, complainant was not to receive any fee, and was only to receive his expenses incurred on the trip. Complainant, we think, understood that his compensation, if any, would result in his being retained as the attorney, or one of the attorneys for the receiver, in the event it was determined after an investigation to be made by Mr. Polk at Sumter that a receivership was desirable, and otherwise he was not to receive any fee. In this view of the case, we do not think the authorities cited and relied upon can have any application.

It results that we find no error in the decree of the chancellor, and all assignments are overruled, and the decree is affirmed. Appellant and sureties on the appeal bond will pay the cost of this appeal.

Anderson and Crownover, JJ., concur.