**CHAMBLISS, BAHNER & CRAWFORD,**
**Appellant,**

**v.**

**William F. LUTHER et al., Appellees.**

Court of Appeals of Tennessee,
Eastern Section.

July 23, 1975.

Certiorari Denied by Supreme Court
Dec. 8, 1975.

Spears, Moore, Redman & Williams, Chattanooga, for appellant.

Shattuck & Payne, Chattanooga, for appellees.

OPINION

GODDARD, Judge.

This is a suit by a firm of attorneys for collection of a fee for a previous lawsuit. Plaintiff-Appellant Chambliss, Bahner, and Crawford is a Chattanooga law firm whose senior partner, Jac Chambliss, represented Defendants-Appellees in a lawsuit against the Detrex Corporation in a stock securities matter.

The case arose in the following manner: Mr. Chambliss had been engaged as an attorney by Lutex, Inc. since the formation of the corporation, and owned a few shares of its stock. In 1968 Detrex, a large chemical firm, became interested in acquiring Lutex and as a result of the ensuing negotiations, Detrex absorbed the smaller concern. The absorption was accomplished by an exchange of stock, the stockholders of Lutex

receiving Detrex stock in exchange for their interest in Lutex.

In the latter part of 1969, the former principal shareholders of Lutex became concerned that the stock they had received was not as valuable as they had been led to believe. They contacted Attorney Chambliss, who took the case and managed to secure a compromise settlement offer of $860,000 from Detrex. The former stockholders of Lutex were not satisfied with this offer and decided to bring suit against Detrex for a violation of securities regulations.

On June 5, 1971, Attorney Chambliss was retained to bring that suit upon a contingency fee basis. It was agreed that his fee would be 15 percent of the recovery above the compromise offer.

The stockholders became dissatisfied with his representation. About one year after the suit was filed, the stockholders suggested to Attorney Chambliss that another local attorney, John I. Foster, Jr., be associated in the case. Mr. Foster's association was with the approval of Mr. Chambliss. They agreed among themselves that the division of the 15 percent contingency fee would be 70 percent to Chambliss and 30 percent to Foster. Thereafter, Attorney Foster was made lead counsel for the litigation by the stockholders. Chambliss did not approve of this move and withdrew as counsel by letter dated May 15, 1972. Commendably, however, he did not remove his name as counsel of record in the federal district court because, as he notes, he did not want "to jeopardize the Plaintiffs' chances in [the federal court] lawsuit."

On October 31, 1972, that suit was settled for the sum of $965,150, a betterment of $105,150 over the base offer. It was agreed that Attorney Chambliss did not take part in the negotiations which led to the final settlement, although as counsel of record he approved the order of settlement and, as a stockholder, raised no objection. He received for his stock some $46,000 on an investment of $2,000.

Under the contingency fee contract, Attorney Chambliss' 15 percent would have been $15,772.50. The Chancellor in the present action held that the contract of employment had been breached by the appointment of Attorney Foster as lead counsel, but that the damages to Attorney Chambliss should be limited to the contract price. Attorney Chambliss seeks recovery in *quantum meruit*, claiming that he and his brother have spent over 1,000 hours on this lawsuit over the period of two years and that he is entitled to reasonable compensation for these services apart from the contract. The testimony as to the reasonable value of his services ranged from $60,000 to $175,000.

Under Tennessee law—and it appears the rule is practically universal—a client is entitled to discharge his attorney with or without cause. The reason, which is apparent, is set out in *Spofford v. Rose*, quoting from the opinion rendered by the Court of Civil Appeals, 145 Tenn. 583, 608, 237 S.W. 68, 76 (1921):

". . . Just two or three of these authorities may be adverted to. Ruling Case Law thus announces the rule:

" 'The authorities uniformly recognize the right of a client to terminate the relation between himself and his attorney at his election, with or without cause; the existence or nonexistence of a valid cause for the discharge of the attorney bearing only upon his right to compensation. This power cannot be affected by a previous arrangement, as, for instance, by a contract for a contingent fee. The right of a client to change his attorney at will is based on necessity in view of both the delicate and conditional nature of the relation between them and of the evil engendered by friction or of distrust. * * An attorney is, of course, entitled to notice of his discharge, though such notice need not be formal; any act being sufficient which shows an intention to sever the relation.' 2 R.C.L. p. 957.

"Corpus Juris thus states the law:

" 'The law is well settled that a client has the right to discharge his attorney at any time, either with or without cause, and this is true, although the motion for permission to substitute is restricted by persons claiming to be the assignees of the interest of such parties where there is a controversy as to such assignment. The relation between attorney and client is such that the client is justified in seeking to dissolve that relation whenever he ceases to have absolute confidence in either the integrity, the judgment, or the capacity of the attorney. Such applications are ordinarily allowed as matter of course, unless it appears that such good reasons exist that justify the court in refusing to make the order.' 6 Corpus Juris, 670–677.

"And again:

" 'The relation of attorney and client is peculiar, in that the law permits the termination thereof in a manner not recognized in other contracts. Either party may dissolve the relation for cause and the client may dissolve it without cause.' 6 Corpus Juris, 673."

Plaintiff, while recognizing this rule, insists that because Defendants breached the employment contract it is entitled to proceed on the basis of *quantum meruit* and its recovery is not limited by the amount of the original contract.

■ Under the general law, remedies available for breach of contract are damages, specific performance, and restitution. Corbin on Contracts (1964 Ed.), § 1102.

■ The purpose of the remedy of damages is to put the party in as good a position as he would have been had the contract been completed, and accordingly a plaintiff may recover for the promised performance as well as consequential damages. Corbin, § 1102.

The remedy of specific performance requires the party to perform that which he had promised to do, such as convey land or transfer art objects.

Restitution is the theory relied upon by the Plaintiff, although the complaint prays for damages. The distinction between the two is significant and has not always been recognized in the reported cases. The remedy of restitution restores the injured party to the position he occupied prior to the contract being made. In some cases, it contemplates the return of the specific property and in others, a judgment for the equivalent in money for the performance rendered by the Plaintiff and received by the Defendant. One who has been wrongfully denied or otherwise prevented from fully performing, i. e., earning the agreed compensation, may regard the contract as terminated and seek judgment for the reasonable value of all the defendant received in the performance of the contract. In the case of goods sold and delivered, the theory is *quantum valebat* (as much as they were worth), and in that of work and services performed, *quantum meruit* (as much as he deserved). In such cases, the weight of authority is that the amount recoverable is not limited to the contract price. Corbin, §§ 1107, 1109.

A suit for damages is not the same as one for restitution. And under the old formal rules of pleading, the plaintiff was limited to recovery on contract and not on the basis of *quantum meruit*. Further, strange as it may seem, if the contract had been substantially performed, plaintiff's only remedy was on the contract, because defendant had become a debtor through his receipt of the whole consideration for his promise. And in such cases, absent consequential damages, recovery was limited to the contract price. If, however, plaintiff had only partially performed, he could recover under the theory of *quantum meruit* without regard to the contract price. Corbin, § 1110.

It is extremely difficult to find cases in point in connection with the matters raised by this appeal, for the reason that in most instances where an attorney has completed only a portion of the work for which he was employed, the reasonable value of his services is less than his contract fee.

Plaintiff relies on two Tennessee cases, neither of which specifically distinguish an action for damages from one for restitution. In *Brownlow v. Payne*, 2 Tenn.App. 154 (1925), the attorney was employed by written contract on a contingency fee to represent client in connection with the wrongful death of her husband. The client thereafter discharged the attorney and still later made settlement of the case utilizing the services of another attorney. In that case the original attorney contended he was entitled to his entire contract fee, one-third of the ultimate settlement. The client contended that the attorney was entitled to recover only the reasonable value of his services on the basis of *quantum meruit.* The Court held that because the attorney was discharged without cause, he was entitled to sue either on the basis of *quantum meruit* or for breach of contract and, having sued for damages, was entitled to his full contract fee. It is apparent the *quantum meruit* theory insisted upon by defendant would have been less than the contract fee.

In the second case, *Spears v. Polk*, 17 Tenn.App. 556, 69 S.W.2d 239 (1933), client agreed to pay attorney's expenses for a trip to South Carolina to investigate whether a receivership proceeding should be instituted on behalf of the client. The client agreed to pay the attorney's expenses for this investigation and further agreed that no proceeding would be instituted unless a favorable receiver could be appointed who would then employ the attorney and pay his fee. In that case, both the trial court and the appellate court found that there was no agreement by the client to pay the attorney any additional fee and consequently dismissed the suit. By the way of *dictum*, the Court said:

> We think it well settled that, where an attorney is employed to institute a suit on a contingent fee, and renders legal services in connection with the contract of employment, and the client, without the consent of the attorney, abandons the suit or makes a settlement thereof, noth-

ing more appearing, the attorney is entitled to recover the reasonable value of the services rendered on a quantum meruit. (Citations omitted.)

*Spears v. Polk*, 17 Tenn.App. 556, 561, 69 S.W.2d 239, 242.

We construe these two cases to hold that where an attorney has been discharged without cause or the client abandons or settles the case without the attorney's consent, the attorney may collect either on the basis of *quantum meruit* or on his contract. Neither case, however, specifically addresses itself to the question presented in the case at bar.

Plaintiff further cites *Re Montgomery*, which unquestionably stands for the proposition he propounds. In that case an attorney for an estate, who had a contract fee for a fixed amount, was discharged without cause. The Court allowed the attorney to recover a sum in excess of his contract fee on the basis of *quantum meruit.* In so doing, the Court of Appeals of New York reasoned:

> In the case at bar the recovery allowed is upon the basis of quantum meruit without regard to the contract price, and the question for determination is whether the right of the attorney to recover is limited by the contract price of $5,000.

> Thus far it has been decided that the discharge of the attorney canceled and annulled the contract and that the contract having been canceled, it could not limit the amount of the recovery although it might be considered in fixing the amount of the reasonable value of the services rendered; the theory being that the cancellation could not be a half way cancellation.

> "It wholly stands or totally falls." *In re Tillman*, 259 N.Y. 133, 135, 181 N.E. 75; *Application of Krooks*, 257 N.Y. 329, 178 N.E. 548.

> Under that theory, the contract price does not constitute a limitation on the amount of an attorney's recovery, al-

112

though its effect may be to enhance the amount the client may be compelled to pay and in a certain sense penalizes the client for exercising a privilege given by law to discharge an attorney at will regardless of cause.

*Re Montgomery,* 272 N.Y. 323, 6 N.E.2d 40, 41 (1936).

Plaintiff also cites the California case of *Tracy v. MacIntyre,* 29 Cal.App.2d 145, 84 P.2d 526 (1938) as support for his position. In that case an attorney was employed on a contingent fee in connection with a personal injury claim and thereafter plaintiff sought an order to substitute another attorney. The first attorney in the order of substitution proceeding sought to have an attorney fee fixed for the services he had rendered to date. The California District Court of Appeals held that he was entitled to a fee for reasonable value of his services and to have it fixed prior to the conclusion of the litigation. This case is not in point. Additionally, it appears that a still later California Supreme Court case, *Fracasse v. Brent,* 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9 (1972), overruled *Tracy* and holds that any action by a discharged attorney to collect a contingency fee prior to the conclusion of the tort action is premature. The Court further, at page 13, 6 Cal.3d at 790, 100 Cal.Rptr. at 389, uses language which we think is instructive:

We have concluded that a client should have both the power and the right at any time to discharge his attorney with or without cause. Such a discharge does not constitute a breach of contract for the reason that it is a basic term of the contract, implied by law into it by reason of the special relationship between the contracting parties, that the client may terminate that contract at will. It would be anomalous and unjust to hold the client liable in damages for exercising that basic implied right. (See *Martin v. Camp,* 219 N.Y. 170 [114 N.E. 46], setting forth the rationale for the New York rule.)

Defendants' counsel cites annotations under 109 A.L.R. 674, for his position that other jurisdictions have limited recovery to the contract price. This work does cite cases from Kentucky and Wisconsin to this effect. We have, however, reviewed these cases and in all candor cannot say they sustain the position insisted upon by counsel. The Kentucky cases do imply that recovery will be limited to the contract price as they suggest the measure of damages is the contract price abated by a sum reasonably represented by the unperformed part of the labor. The Wisconsin case merely holds that when a court, in a foreclosure suit, has fixed the reasonable value for services of an attorney, such determination is binding in a subsequent suit for attorney fees on the basis of *quantum meruit.*

The only case we can find directly in point which is supportive of Defendants' position, is *Moore v. Fellner,* 50 Cal.2d 330, 325 P.2d 857 (1958), wherein the California Supreme Court said, at page 863:

As declared in *Salopek v. Schoemann* (1942), supra, 20 Cal.2d 150, 153[1], 155[3], 124 P.2d 21, "if an attorney is discharged for sufficient cause he is entitled to no more than the reasonable value of his services rendered prior to his discharge," has "no cause to complain and is fully protected by payment of the reasonable value," and may not recover the full contract amount (at least if such amount exceeds the reasonable value of the services). On the other hand in a case in which the discharge appears to have been without cause, it has been held that where the contract amount is less than the reasonable value of the services, recovery is nevertheless limited to the fee fixed by the contract. (See *Oliver v. Campbell* (1954), supra, 43 Cal.2d 298, 306[9], 273 P.2d 15.) In the present case plaintiff sought and was awarded judgment based on reasonable value. Under the rules above stated his recovery must not, of course, exceed the fee fixed by the employment contract, less expenses to

which the client (defendant) was put by the change of counsel.

█ It seems to us that a necessary corollary to the rule that a client has the unqualified right to discharge an attorney, must be that the exercise of this legal right does not subject the client to additional penalties requiring him to pay an amount above the contract price.

Plaintiff's counsel persuasively argues that the rule should be as insisted by him, especially in contingent fee cases, for the reason that a highly skilled and competent attorney might be discharged by the client, who then entrusts the case to a less skillful one. The resulting loss of the suit would preclude the first attorney from receiving any fee. This argument is certainly appealing. However, in this case we are not called upon to make a decision in regard to these assumptions.

It would seem to us that the better rule is that because a client has the unqualified right to discharge his attorney, fees in such cases should be limited to the value of the services rendered or the contract price, whichever is less. However, we do not so hold because such a holding is contrary to *Brownlow,* supra.

We do simply hold that under the circumstances here shown, wherein there is no claim of fraud or overreaching as to the discharged attorney, and the settlement ultimately received is not assailed as inadequate or improper, recovery is limited to the contract price.

The decision of the Chancellor in this case preserved for Attorney Chambliss every penny to which he would have been entitled had he not been discharged. Because he is an officer of the court and a minister of justice, we do not believe he should insist upon more.

To adopt the rule advanced by Plaintiff would, in our view, encourage attorneys less keenly aware of their professional responsibilities than Attorney Chambliss, as shown in this record (unfortunately, events of the last year have shown there are such), to induce clients to lose confidence in them in cases where the reasonable value of their services has exceeded the original fee and thereby, upon being discharged, reap a greater benefit than that for which they had bargained.

It is arguable that the Chancellor may be affirmed on two additional grounds. First, that the complaint filed in fact is one for damages rather than restitution, and under practically all authority, in such suit the contract price is a limiting factor. Secondly, because Attorney Chambliss had substantially completed his employment, his suit must be one on the contract rather than on the basis of *quantum meruit.* In view of the liberalized rules of pleading which have been adopted in this State, and the fact the case was tried without objection both below and here on the theory of *quantum meruit,* and further that the record is not clear as to the legal services necessarily rendered subsequent to Attorney Chambliss' withdrawal, we believe the decision herein should rest only upon the grounds previously stated.

In conclusion, we think that Attorney Chambliss himself has identified the problem giving rise to this suit, when in response to a letter from Attorney Foster to him on May 5, 1972, seeking a re-allocation of the fees, he advised, "If the bargain you made was a bad bargain, then so was ours."

The assignment of error is overruled and the judgment of the Trial Court affirmed. The costs of the cause are taxed to the Plaintiff and the sureties on its appeal bond.

PARROTT and SANDERS, JJ., concur.