# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 30, 2001 Session

## JULIA BETH CREWS v. BUCKMAN LABORATORIES INTERNATIONAL, INC.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. CT-001642-00      The Honorable D'Army Bailey, Judge**

---

### No. W2000-01834-COA-R3-CV - Filed June 18, 2001

---

Plaintiff, attorney employed in legal department of corporation, sued the corporation for retaliatory discharge. Plaintiff alleges that she was discharged in retaliation for her reporting her superior, general counsel of the corporation, for the unauthorized practice of law, because her supervisor was unlicensed in the State of Tennessee. The trial court dismissed plaintiff's complaint pursuant to Tenn.R.Civ.P. 12.02(6) for failure to state a claim upon which relief can be granted. Plaintiff appeals. We affirm.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and JOE G. RILEY, J., joined.

Donald A. Donati, William B. Ryan, Memphis, For Appellant, Julia Beth Crews

Frederick J. Lewis, Thomas L. Henderson, Whitney K. Fogerty, Memphis, For Appellee, Buckman Laboratories International, Inc.

### OPINION

Plaintiff/Appellant, Julia Beth Crews ("Ms. Crews"), appeals the order of the trial court dismissing her complaint against Defendant, Buckman Laboratories International, Inc. (Buckman), pursuant to Tenn.R.Civ.P. 12.02(6) for failure to state a claim upon which relief can be granted.

A motion to dismiss pursuant to Tenn.R.Civ.P. 12.02(6) for failure to state a claim upon which relief can be granted is the equivalent of a demurrer under our former common law procedure and thus is a test of the sufficiency of the leading pleading. *See Cornpropst v. Sloan*, 528 S.W.2d 188, 190 (Tenn. 1975). The motion admits the truth of all relevant and material averments in the

complaint but asserts that the statements do not constitute a cause of action. ***See id.*** at 190. In considering whether to dismiss a complaint for failure to state a claim, the court should construe the complaint liberally in favor of the plaintiff, taking all of the allegations of fact therein as true. ***See Huckeby v. Spangler***, 521 S.W.2d 568, 571 (Tenn. 1975). A complaint should not be dismissed upon such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." ***Fuerst v. Methodist Hospital South***, 566 S.W.2d 847, 848 (Tenn. 1978). Obviously, we are limited to an examination of the complaint alone, thus the factual material in the opinion is taken solely from the complaint.

Ms. Crews was serving as an in-house attorney[1] for Buckman when she discovered that her supervisor, Katherine Buckman Davis ("Ms. Davis"), was not licensed to practice law in the State of Tennessee. Ms. Crews and a co-worker, David Bowles[2], contacted Joe M. Duncan, an attorney and a member of Buckman's board of directors, and expressed their concern that Ms. Davis was engaged in the unauthorized practice of law. As a result of this conversation, Mr. Duncan submitted a hypothetical set of facts to the Tennessee Board of Professional Responsibility (the "Board") that mirrored those of the Buckman situation. Additionally, Mr. Duncan asked the Board to give an opinion as to: 1) whether a person with a valid law license in another state can be employed as general counsel in Tennessee, and, 2) if such a situation required a Tennessee law license, whether failure to obtain such a license constituted the unauthorized practice of law.

In response to Mr. Duncan's inquiries, the Board wrote that, "a person with a valid license from another state may not be employed as general counsel in Tennessee, unless that person also has a valid Tennessee law license." The Board also stated that, unless the general counsel in question was being supervised pursuant to Section 10.04 of Supreme Court Rule 7, failure of the general counsel to obtain a Tennessee license would appear to constitute the unauthorized practice of law.

After advising Ms. Crews of the opinion of the Board of Professional Responsibility, Mr. Duncan told Ms. Crews that Ms. Davis intended to take the Tennessee Bar Examination and obtain the required license. However, Ms. Crews later learned that Ms. Davis had not registered to take the next available bar exam. At this point, Ms. Crews and her co-worker confronted Ms. Davis with their concerns and notified Buckman's president, Steve Buckman, of the potential liability to the company. Ms. Davis eventually took the July, 1997 Tennessee Bar Exam and, later that year announced that she had passed, leaving Ms. Crews and other of Buckman's employees with the impression that she was licensed in Tennessee.

In May of 1999, Ms. Crews became concerned that Ms. Davis had not, in reality, completed the requirements for licensure in Tennessee. Upon contacting the Board of Professional Responsibility, Ms. Crews discovered that Ms. Davis had not taken the Multi-State Professional

---

[1] Buckman initially employed Ms. Crews in 1995 as a legal assistant. After Ms. Crews passed the Tennessee Bar Examination that year, she began working as an attorney in Buckman's legal department.

[2] Mr. Bowles left Buckman's employ in 1998.

Responsibility Examination ("MPRE"), and that her application with the Board was still pending. After determining that Ms. Davis was still not licensed in Tennessee, Ms. Crews again discussed the situation with Ms. Davis and Steve Buckman. The complaint states in pertinent part:

> Plaintiff informed Davis and officials of the corporation that this matter had to be corrected immediately and that it had serious implications for the company, Davis, and Plaintiff. Plaintiff advised Davis and the corporation that the following steps needed to immediately occur in order to protect Buckman: (1) identify all potential sources of liability, including review of all E-mail, documents, and mail to determine what documents were tainted with the impression that Davis was an attorney; (2) immediately register for the MPRE; (3) obtain an opinion from outside counsel about all steps to be taken as individuals and the company; and (4) full disclosure of the events to the Board of Professional Responsibility.

Following an angry confrontation with Ms. Davis, and concerned that Ms. Davis had not fully disclosed the situation to Buckman's board of directors, Ms. Crews sought the advice of independent legal counsel in August of 1999. Shortly thereafter, upon advice of counsel, Ms. Crews contacted the President of the Board of Law Examiners and informed him of the situation involving Ms. Davis. In October of 1999, Ms. Davis told Ms. Crews that she had received a "show cause" order from the Board of Law Examiners, asking Ms. Davis for clarification regarding her Tennessee Bar application.

Over the course of the above events, the relationship between Ms. Crews and Ms. Davis deteriorated. Ms. Crews received a below-average raise for the first time in her employment with Buckman in July of 1999. Ms. Crews spoke to the Vice President of Human Resources and Steve Buckman regarding the situation, and told them the situation with Ms. Davis had become untenable. Ms. Crews and Buckman sought to find a way for Ms. Crews to transfer to a position which was not under Ms. Davis's supervision and eventually leave the company. Before this arrangement was settled, Ms. Davis informed Ms. Crews that the company no longer required Ms. Crews's services.

Ms. Crews brought this action seeking compensatory and punitive damages for wrongful discharge. In response to Ms. Crews's complaint, Buckman filed a Rule 12.02(6) motion to dismiss. The trial court granted Buckman's motion, and Ms. Crews has appealed. The sole issue on appeal is whether Ms. Crews has stated a common law claim for retaliatory discharge in violation of the public policy of the State of Tennessee.[3]

---

[3]We note that Ms. Crews has not proceeded under T.C.A. § 50-1-304, which provides a statutory remedy for wrongful discharge. However, our reasoning in this case would apply equally to any cause of action premised upon that statute because the Tennessee Supreme Court has held this statutory remedy to be cumulative of the common law action. *See Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 825 (Tenn. 1993) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992)).

(continued...)

In Tennessee, "an employee-at-will can be discharged without breach of contract for good cause, bad cause or no cause at all." *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 445 (Tenn. 1984) (citing *Payne v. Railroad Company*, 81 Tenn. 507 (1884)). *See also Johnson v. Saint Francis Hosp., Inc.*, 759 S.W.2d 915, 928 (Tenn. Ct. App. 1988). In *Clanton*, our Supreme Court recognized a public policy exception to the At-Will Employment Doctrine and allowed an employee to sue his employer for retaliatory discharge. 677 S.W.2d at 445. The *Clanton* Court held that such a cause of action was "necessary to enforce the duty of the employer, to secure the rights of the employee and to carry out the intention of the legislature" under Tennessee's workers' compensation law. *Id.* The Tennessee Supreme Court has since expanded the exception:

> In Tennessee an employee-at-will generally may not be discharged for attempting to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy which is evidenced by an unambiguous constitutional, statutory, or regulatory provision. *See e.g., Mason v. Seaton*, 942 S.W.2d 470 (Tenn.1997); *Conatser v. Clarksville Coca-Cola*, 920 S.W.2d 646 (Tenn.1995); *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822 (Tenn.1994); *Anderson v. Standard Register Co.*, 857 S.W.2d 555 (Tenn.1993); *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn.1992); *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552 (Tenn.1988); *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441 (Tenn.1984).

---

[3](...continued)

T.C.A. § 50-1-304 (Supp. 2000) provides, in relevant part:

§ 50-1-304. Retaliatory discharge

(a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

(b) In addition to all employees in private employment, the provisions of this section shall apply to all employees who receive compensation from the federal government for services performed for the federal government, notwithstanding that such persons are not full-time employees of the federal government.

(c) As used in this section, "illegal activities" means activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.

(d)(1) Any employee terminated in violation of subsection (a) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

(2) Any employee terminated in violation of subsection (a) solely for refusing to participate in, or for refusing to remain silent about, illegal activities who prevails in a cause of action against an employer for retaliatory discharge for such actions shall be entitled to recover reasonable attorney fees and costs.

***Stein v. Davidson Hotel Co.***, 945 S.W.2d 714, 717 (Tenn. 1997).

The question of whether an in-house attorney may state a claim of retaliatory discharge is an issue of first impression in Tennessee. Ms. Crews urges this Court to hold that such a common-law claim is appropriate under the "public policy" exception to the At-Will Employment Doctrine. For the reasons below, we are constrained to hold that the public policy exception does not apply to the particular facts of this case.

A survey of the dozen or so cases from other jurisdictions which have addressed this issue reveals three basic approaches: 1) allow the cause of action under a breach of contract theory; 2) allow the cause of action if it does not involve a breach of client confidentiality; and 3) do not allow the cause of action under any circumstances. The breach of contract theory, which is not at issue in this case[4], allows an at-will employee to sue an employer based upon an implied "just-cause" contract. Under this theory, an employer's statements of company policy may give rise to an implied contract between the employer and in-house attorney. ***See Golightly-Howell v. Oil, Chemical & Atomic Workers Int'l Union***, 806 F.Supp. 921, 924 (D.Colo. 1992); ***Mourad v. Automobile Club Ins. Ass'n***, 465 N.W.2d 395, 399-400 (Mich. Ct. App. 1991).

The second approach permits in-house counsel to file a claim for retaliatory discharge if "the claim can be proved without any violation of the attorney's obligation to respect client confidences and secrets." ***GTE Products Corp. v. Stewart***, 653 N.E.2d 161, 167 (Mass. 1995). ***See also General Dynamics Corp. v. Superior Court***, 876 P.2d 487, 503-04 (Cal. 1994). The ***GTE*** Court confined its holding to a very narrow set of circumstances, noting that even a "non-attorney colleague" bringing an action for wrongful discharge would need to establish that such a claim could "be proved without any violation of the attorney's obligation to respect client confidences and secrets." 653 N.E.2d at 168.

The last approach is to completely deny such retaliatory discharge claims. The leading case for this view is ***Balla v. Gambro, Inc.***, 584 N.E.2d 104 (Ill. 1991). ***Balla*** is a very well-reasoned opinion and involved an in-house attorney who reported his employer to the FDA for selling medical equipment which did not comply with FDA regulations. ***Id.*** at 106. The Illinois Supreme Court held that neither the public policy considerations underlying the tort of wrongful discharge, nor the ethical constraints of the legal profession would be served by enlarging the scope of the public policy exception to include in-house attorneys. ***Id.*** at 108.

In Tennessee, as in Illinois, the narrow public policy exception to at-will employment reflects a balance between the interests of the employer in making independent business judgments and the freedom of employees to exercise their rights under clearly expressed public policy. ***See, e.g., Stein***, 945 S.W.2d at 717. Ms. Crews argues that "Tennessee has expressed a strong public policy for the regulation of lawyers" and that this policy is evidenced by the laws of the State of Tennessee and the Code of Professional Responsibility which the Tennessee Supreme Court adopted through Rules 8

---

[4]Ms. Crews has not argued that such a theory applies in the instant case.

and 9 of the Rules of the Supreme Court. We wholeheartedly agree. However, we believe that this important public policy is adequately served by the existing protections of Tennessee's statutes and the Code of Professional Responsibility.

T.C.A. § 23-3-103 (Supp. 2000) provides in pertinent part:

**§ 23-3-103. Unlawful practice prohibited - Penalty. -**

(a) No person shall engage in the "practice of law" or do "law business," or both, as defined in § 23-3-101, unless such person has been duly licensed therefor, and while such person's license therefor is in full force and effect, nor shall any association or corporation engage in the "practice of the law" or do "law business," or both as defined in § 23-3-101.

Under the Code of Professional Responsibility, "A lawyer shall not aid a non-lawyer in the unauthorized practice of law." Tenn.S.Ct.R. 8, DR 3-101(A). The Supreme Court Rules also require an attorney with unprivileged knowledge of a violation of a Disciplinary Rule to report the violation. *See* Tenn.S.Ct.R. 8, DR 1-103(A). The penalties for violating a Disciplinary Rule can be very severe, ranging from "private informal admonition" to disbarment. *See* Tenn.S.Ct.R. 9, § 4. Therefore, under the law of Tennessee, once Ms. Crews had knowledge that Ms. Davis was engaged in the unauthorized practice of law, the Disciplinary Rules required her to report Ms. Davis's conduct. We believe that this well-established disciplinary requirement is, in and of itself, sufficient to protect the public policy concerns at issue in this case.

Ms. Crews argues, among other things, that expanding the public policy exception to include in-house counsel would serve to promote "lawful conduct by counsel" and "protect and promote the rule of law and the integrity of the profession." Essentially, Ms. Crews is arguing that lawyers need motivation to abide by the Disciplinary Rules and report conduct which is violative of those rules.[5] This argument also implies that an in-house attorney has a choice between the Disciplinary Rules and retaining his or her job. No such choice exists. As the Illinois Supreme Court, in *Balla*, noted:

> . . . appellee argues that not extending the tort of retaliatory discharge to in-house counsel would present attorneys with a "Hobson's choice." According to appellee, in-house counsel would face two alternatives: either comply with the client/employer's wishes and risk both the loss of a professional license and exposure to criminal sanctions, or decline to comply with client/employer's wishes and risk the loss of a full-time job

---

[5]This is the main argument the dissent in *Balla* made in support of recognizing a retaliatory discharge claim for in-house counsel. *See* 584 N.E.2d at 113-15.

and the attendant benefits. We disagree. Unlike the employees. . .
which this court recognized would be left with the difficult
decision of choosing between whether to file a workers'
compensation claim and risk being fired, or retaining their jobs and
losing their right to a remedy, in-house counsel plainly are not
confronted with such a dilemma. ***In-house counsel do not have a
choice of whether to follow their ethical obligations as attorneys
licensed to practice law, or follow the illegal and unethical
demands of their clients.*** In-house counsel must abide by the
Rules of Professional Conduct. Appellee had no choice but to
report to the FDA Gambro's intention to sell or distribute these
dialyzers, and consequently protect the aforementioned public
policy.

584 N.E.2d at 109 (citations omitted)(emphasis added).

Ms. Crews also argues that enlarging the scope of the public policy exception
"encourages employers to comply with the law." We believe that, rather than encouraging
compliance, such an action could seriously impair the special relationship of trust between an
attorney and his or her client. In Tennessee, as well as practically every other jurisdiction, a
client may fire attorney at any time and for any reason. ***See, e.g., Chambliss, Bahner and
Crawford v. Luther***, 531 S.W.2d 108, 109 (Tenn. Ct. App. 1975). Once a client decides to
terminate his relationship with the attorney, the attorney is under a mandatory duty to withdraw
from his client's employment. ***See*** Tenn.S.Ct.R. 8, DR 2-110(B)(4). These rules reflect the need
for the client to have complete trust in his attorney. ***See Chambliss***, 531 S.W.2d at 110. As the
***Balla*** Court noted:

> We believe that if in-house counsel are granted the right to sue
> their employers for retaliatory discharge, employers might be less
> willing to be forthright and candid with their in-house counsel.
> Employers might be hesitant to turn to their in-house counsel for
> advice regarding potentially questionable corporate conduct
> knowing that their in-house counsel could use this information in a
> retaliatory discharge suit.

***Id.*** at 109. We believe the same logic applies to the argument that this Court should expand the
tort of retaliatory discharge where a plaintiff/attorney can prove his or her case without violating
the rules of privilege. In the unlikely event that the in-house attorney were able to prove
retaliatory discharge without violating privilege, such a claim might have the effect of chilling
the attorney-client relationship.

Ms. Crews suggests that allowing money damages as a remedy for wrongful discharge of
in-house counsel would serve to satisfy the employer/client's right to discharge in-house counsel

for any reason, as well as the withdrawal requirement of the Disciplinary Rules. However, this "middle ground" still does not address the issue of the potential chilling of the attorney-client relationship. Additionally, allowing money damages in this type of case has the effect of shifting the costs of in-house counsel's adherence to the Disciplinary Rules from the attorney to the employer/client. *See id.* at 110. As the *Balla* Court pointed out, "all attorneys know or should know that at certain times in their professional career, they will have to forgo economic gains in order to protect the integrity of the legal profession." *Id.* at 110.

For the foregoing reasons, we affirm the order of the trial court dismissing Plaintiff/Appellant's lawsuit for failure to state a claim. This case is remanded to the trial court for any further proceedings consistent with this opinion. Costs of this appeal are assessed to the Appellant and her sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE,W.S.