IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 10, 2002 Session

# MITCH GRISSIM & ASSOCIATES v. BLUE CROSS & BLUE SHIELD OF TENNESSEE

**A Direct Appeal from the Chancery Court for Davidson County**
**No. 98-2687-II     The Honorable Carol L. McCoy, Chancellor**

---

**No. M2001-02170-COA-R3-CV - Filed September 17, 2002**

---

This appeal involves a suit by an attorney against a former client for attorney fees allegedly due when the client terminated contingency fee contracts. The trial court denied plaintiff-attorney's motion for partial summary judgment and granted defendant-client's motion for summary judgment, holding that the attorney was not entitled to recover fees for services provided to the client prior to discharge. Plaintiff has appealed. We reverse and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY KIRBY LILLARD, J., joined.

Richard J. Braun and Patricia E. Crotwell of Nashville For Appellant, Mitch Grissim & Associates

Patricia Head Moskal, Nashville, For Appellee, Blue Cross & Blue Shield of Tennessee

## OPINION

In 1996, Defendant Blue Cross Blue Shield of Tennessee ("BCBST"), a hospital and medical services corporation engaged in the marketing and administration of medical benefits plans, including insurance, retained Plaintiff Mitch Grissim & Associates ("Grissim"), a sole proprietorship engaged in the practice of law in Nashville, Tennessee, to represent BCBST in assigned subrogation matters.

In the fall of 1996, shortly after retaining Grissim, BCBST decided to reduce the number of attorneys it retained for the handling of subrogation matters in the four major metropolitan areas of Tennessee, including Nashville. Under the new subrogation management strategy, BCBST planned

to retain a minimum of two, and no more than three, attorneys in each of the metropolitan areas. Through a written letter dated November 5, 1996, BCBST's senior legal counsel, Tena Roberson, notified Grissim of the change and that it was a potential candidate for one of the subrogation counsel positions in the Middle Tennessee region.

Shortly after receipt of the November 5 letter, Grissim submitted a fee proposal to BCBST. On March 7, 1997, after reviewing the fee proposal submitted by Grissim, BCBST sent Grissim a letter containing a proposed attorney fee schedule. Under this proposal, any party assigned to a subrogation file would be entitled to a percentage of the total fee received. Recovery was divided into four dollar amount stages, with the attorney entitled to varying percentages of recovery for the respective stages. The sliding scale proposal awarded a higher percentage of recovery for cases that went to trial and a lower percentage for cases settled or mediated.

On March 18, 1997, Grissim submitted a written counter proposal to BCBST. Grissim's counter proposal would amend the March 7 proposal to provide the assigned attorney an increased percentage of the total fee on cases where litigation intervention was required, but where the case never reached trial. In a letter dated April 30, 1997, BCBST rejected Grissim's proposal and inquired as to whether Grissim would be willing to accept the terms of the March 7 fee schedule if selected as counsel, and asked for a timely response. By letter of May 7, 1997, Grissim agreed to the fee proposal, and by letter dated May 20, 1997, BCBST informed Grissim that it had been selected to fill one of the subrogation counsel positions for the Middle Tennessee region.

From May 1997 until mid-1998, Grissim represented BCBST in subrogation cases pursuant to the fee schedule set out in the March 7 letter. During this period, Grissim received payment from BCBST in accordance with this fee schedule for all files in which it netted a recovery or settlement offer for BCBST. In May of 1998, BCBST telephoned Grissim to discuss concerns BCBST had with regard to the services Grissim was providing. Specifically, BCBST expressed concern regarding the conduct and performance of one of the associate attorneys Grissim assigned to BCBST cases. BCBST also voiced dissatisfaction with Mitch Grissim's personal mishandling of a file, and Grissim's alleged failure to confirm BCBST's subrogation interest in a case which resulted in a substantial loss of recovery.

Finally, by letter dated June 19, 1998, BCBST immediately terminated Grissim's representation on all BCBST files. The letter detailed the reasons for terminating the relationship, which we need not relate, as Grissim concedes the termination was for cause. Grissim returned an estimated 152 files to BCBST.[1] Although Grissim contends that it provided various legal services on these files, it had yet to secure recovery or a settlement offer on any of them.

On September 3, 1998, Grissim brought an action against BCBST for breach of contract and alternatively for recovery on quantum meruit. In February of 2001, Grissim and BCBST filed cross

---

[1] In her deposition filed April 20, 2001, Tena Roberson stated: "Because the parties have been unable to resolve this issue, BCBST cannot agree that the number of files at issue is 152."

motions for summary judgment on the issue of BCBST's liability for additional attorneys' fees for services provided by Grissim on the unresolved cases. Finding that BCBST was not liable for additional attorneys' fees for the cases where Grissim was unable to achieve a final resolution, the trial court granted BCBST's motion for summary judgment. Subsequently, the court denied Grissim's motion for partial summary judgment and dismissed Grissim's claims for breach of contract and consequential damages. Recognizing that Grissim was entitled to reimbursement for expenses incurred on the unresolved files, the trial court granted Grissim 30 days to submit an expense report to BCBST.

On June 11, 2001, Grissim filed a motion to alter or amend the prior order of the trial court granting BCBST's motion for summary judgment. In support of this motion, Grissim submitted affidavits from attorneys Mitch Grissim and Davis Adkisson, and BCBST's Answers to Grissim's interrogatories regarding the status of several subrogation files. Grissim also submitted an exhibit detailing the number of hours dedicated by Grissim attorneys and staff to various BCBST files. On July 6, 2001, BCBST filed a motion to strike these affidavits. At a hearing held on August 15, 2001, the trial court determined that its earlier order granting BCBST's motion for summary judgment was not a final order. The trial court proceeded to enter a final judgment, denying Grissim's motion to alter or amend and BCBST's motion to strike, and dismissed the action.

Grissim has appealed and presents the following issue for review as stated in its brief:

> Whether the trial court erred in holding that Grissim was not entitled
> to recover for the legal services it had provided to Blue Cross and
> Blue Shield of Tennessee?

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn.R.Civ.P. 56.04. The party moving for summary judgment bears the burden of proving that its motion satisfied these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997). Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain,* 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

Insofar as the relationship between the plaintiff and defendant, there is no material dispute of fact. Grissim's complaint alleges that its acceptance of BCBST's proposal in the March 7, 1997 letter constitutes a contract between the parties, and that he is entitled to recover pursuant to the

terms thereof. Alternatively, the complaint seeks recovery on the basis of quantum meruit. BCBST's answer is replete with denials that the March 7 letter constituted a contract, but it states:

> 31. The only agreements for representation between the parties were the individual agreements for representation on each claim forwarded to Grissim by BCBST.
>
> 32. Grissim was an independent contractor of BCBST as to each subrogation case for which he was retained to provide legal representation and his representation could be terminated at any time by BCBST.
>
> 33. The terms of Grissim's representation of BCBST only provide for payment on claims resolved during Grissim's representation; therefore, Grissim is not entitled to recover any portion of payments received on any claims for which he may have been retained but which were not resolved during his representation.
>
> \*                \*                \*
>
> 36. Grissim is not entitled to recover on his claim for quantum meruit. The terms of Grissim's representation of each claim on which he was retained as an independent contractor specifically provided that Grissim would be paid only on those claims which he mediated or tried and on which an ultimate recovery was made.

Although the parties disagree on the technicalities of their relationship, it is clear that the legal services rendered by Grissim to BCBST were rendered on each individual file referred Grissim, which, according to the affidavit of BCBST's witness, Tena Roberson, were sent to Grissim to be handled on a case-by-case basis. Thus, actual contracts between the parties would be the individual attorney-client relationship established when each individual case was assigned, referring to the March 7 agreement to establish the terms of compensation. On the other hand, if it is considered that the March 7 letter accepted by Grissim constitutes a contract, then, of necessity, the contract must include the individual cases assigned on a "case-by-case" basis. Thus, the contract, as to each individual case, is severable. "A contract is severable where each part is so independent of each other as to form a separate contract." *James Cable Partners, L.P. v. City of Jamestown*, 818 S.W.2d 338, 344 (Tenn. Ct. App. 1991). Unlike "entire" contracts, a severable contract can be partially rescinded or terminated, such partial termination not resulting in an *in toto* rescission of all parts of the contract. *Id.* As for the decision in this case, it is not necessary to particularly decide between the two theories. The record reflects that each assigned file involved a distinct subrogation issue regarding a specific client, and each file, of course, had certain required performances to be done on the part of the attorney, which could be different depending on the nature of the particular case. Grissim was compensated separately for each file and the assignments were made for the

particular cases. The assignment letter referred to the fee arrangement set out in the March 7 letter. Therefore, considering all of the factors we have before us, we have a claim by the attorney for compensation due by virtue of, according to his count, 152 separate assignments, under a contingent fee contract.

In its March 7 letter, BCBST defined the essential terms of the agreement with sufficient specificity. The letter defined the recovery amounts and the accompanying compensation percentages for each of the four stages of recovery on the scale, and even provided an explanation as to how the sliding scale would be applied in large cases. The letter further specified that Grissim would be responsible for all reasonable costs of postage, local mileage, and telephone calls, while BCBST would reimburse for extraordinary expenses incurred. Grissim's letter of May 7 constituted an acceptance of the terms of the March 7 letter, thereby establishing a meeting of the minds with regards to the essential contract terms. On this basis, we find that the trial court correctly concluded that the contingency fee agreement set forth in BCBST's March 7 letter to Grissim provided for all of the essential terms of the agreement and was therefore a binding and enforceable contract.

The contingency fee contract between Grissim and BCBST does not explicitly state whether, and to what amount, Grissim is entitled to compensation for services rendered on files where it failed to obtain a recovery or secure a settlement offer in favor of BCBST. BCBST contends that the trial court correctly denied Grissim recovery on unresolved cases because the contract clearly contemplated that Grissim would only be paid a contingency fee for services in cases where it made a monetary recovery on behalf of BCBST. Under this theory, where Grissim made no recovery, no fee was due, regardless of the time and energies expended on the respective case.

"It is well settled in Tennessee that a client has a right to discharge his attorney with or without cause, but upon discharge the attorney is entitled to just and adequate compensation for services rendered." *Adams v. Mellen*, 618 S.W.2d 485, 488 (Tenn. Ct. App. 1981) (internal citations omitted). Where the attorney is discharged without cause, he or she is entitled to collect on the basis of quantum meruit or the contract price, whichever is greater. *Id*. In contrast, if the client had cause to terminate, recovery for the attorney is governed by the lesser of quantum meruit or the contract price. *Id*. at 488. *See also McGee v. Maynard*, No. 01-A-01-9810-CV-00539, 1999 WL 824298, at *1 (Tenn. Ct. App. Aug. 12, 1999).

In this case, it is undisputed that Grissim was discharged for cause, and therefore it is not necessary to examine the validity of BCBST's decision to terminate Grissim's representation.

In finding that Grissim was not entitled to recover attorneys' fees on files where it did not secure a monetary recovery or settlement offer, the court determined that there was a binding contract between Grissim and BCBST that precluded consideration of quantum meruit. We disagree. "A party who had a contract at one time may pursue a quantum meruit recovery if the contract is no longer enforceable." *Castelli v. Lien*, 910 S.W.2d 420, 428 (Tenn. Ct. App. 1995) (citations omitted). Although a valid contract or contracts existed between the parties for nearly thirteen

months, BCBST validly terminated the contracts on June 19, 1998. BCBST's termination prevented Grissim from fully performing under the contracts and thereby rendered the contracts unenforceable.

In *Chambliss, Bahner & Crawford v. Luther*, 531 S.W.2d 108 (Tenn. Ct. App. 1975), a law firm brought an action against a former client to collect a fee for legal services rendered. The client retained the law firm on a contingency fee basis, but discharged counsel prior to obtaining a binding settlement agreement. *Id*. at 109. Soon after, the suit was settled and the firm immediately instituted an action to recover in quantum meruit for legal services provided. *Id*. The court denied the firm recovery under a quantum meruit theory, instead awarding it recovery in the amount of the contract price. The court's decision was based on the fact that this was a unique case where the firm completed a portion of the work for which it was hired and the reasonable value of the services provided was greater than the contract fee. *Id*. at 110. However, in assessing the traditional right of a discharged attorney to recover for performed services, the court noted:

> One who has been wrongfully denied or otherwise prevented from fully performing, i.e., earning the agreed compensation, may regard the contract as terminated and seek judgment for the reasonable value of all the defendant received in the performance of the contract. In the case of goods sold and delivered, the theory is Quantum valebat (as much as they were worth), and in that of work and services performed, Quantum meruit (as much as he deserved).

*Id*.

BCBST's termination of the contingency fee contract prevented Grissim from earning full compensation under the contract and caused the contract to become unenforceable. On this basis, Grissim is entitled to seek quantum meruit recovery for its services.

Recovery under a theory of quantum meruit is "based on a legally implied promise to pay a reasonable amount for goods or services received," and is therefore limited to the actual value of the goods or services received. *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995) (citing *John J. Heirigs Constr. Co. v. Exide*, 709 S.W.2d 604, 601 (Tenn. Ct. App. 1986); *Tennessee Farmers Mut. Ins. Co. v. Pritchett*, 54 Tenn. App. 410, 417, 391 S.W.2d 671, 675 (1964)). In order to recover under a theory of quantum meruit, existence of the following circumstances must be proven:

> (1) there must be no existing, enforceable contract between the parties covering the same subject matter;
> (2) the party seeking recovery must prove that it provided valuable goods and services;
> (3) the party to be charged must have received the goods and services;

(4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated;
(5) the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them.

910 S.W.2d at 427 (internal citations omitted).

Under the facts of this case, we find that all five circumstances could be present. Although the case assignments to Grissim created valid, enforceable contracts, BCBST legally terminated the contracts when it discharged Grissim on June 19, 1998. Therefore, there is no existing, enforceable contract between the parties. Grissim has produced evidence, in the form of affidavits and time logs, that it provided valuable services with regard to the files to which it was assigned at the time of discharge. Immediately upon discharge, Grissim returned the files to BCBST and provided requested updates on the status of pending files to BCBST. As discussed, the circumstances surrounding the formation of the contingency fee agreement indicate that both parties should have reasonably understood that Grissim expected to be compensated for the services it provided on the unresolved files. Finally, it would be unjust to allow BCBST to benefit from services Grissim provided on approximately 152 files without paying for them.

Recovery under quantum meruit is not measured by the detriment to the plaintiff but by the benefit conferred on the defendant. *McGee v. Maynard*, No. 01-A-01-9810-CV-00539, 1999 WL 824298, at *2 (Tenn. Ct. App. Aug. 12, 1999) (citing *Castelli v. Lien*, 910 S.W.2d 420 (Tenn. Ct. App. 1995)). DR 2-106 lists the factors on which a reasonable fee can be based:

(1)     The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2)     The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3)  The fee customarily charged in the locality for similar legal services.
(4)     The amount involved and the results obtained.
(5)     The time limitations imposed by the client or by the circumstances.
(6)     The nature and length of the professional relationship with the client.
(7)     The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8)     Whether the fee is fixed or contingent.

***Johnson v. Hunter***, 1999 WL 1072562 (Tenn. Ct. App. 1999) (citing Sup. Ct. Rule, Code of Prof. Resp. DR 2-106; ***see also Connors v. Connors***, 594 S.W.2d 672, 676-77 (Tenn. 1980) (citing DR 2-106)).

For the reasons stated, we reverse the order of the trial court and remand the case for further proceedings to determine the precise determination of the number of cases assigned to plaintiff by defendant at the time of discharge, and the quantum meruit value of the services provided by plaintiff on said cases. Costs of the appeal are assessed against the appellee, Blue Cross and Blue Shield of Tennessee.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.