IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 2025 Session

## 83 FREIGHT, LLC v. C4 SOURCING SOLUTIONS, LLC ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 19-0897-II      Anne C. Martin, Chancellor**

_____

**No. M2023-01778-COA-R3-CV**
_____

This appeal concerns counterclaims and third-party claims for breach of contract, violation of the Prompt Pay Act of 1991, and enforcement of a lien. The counter-plaintiff, C4 Sourcing Solutions, LLC, alleged that a third-party defendant, Capital City Construction, LLC, breached its agreement to purchase 171 custom-fabricated steel containers for use in an apartment complex. C4 also sought to enforce a lien against the complex property, which was owned by the plaintiff, 83 Freight, LLC. After a trial, the jury found Capital City breached its contract with C4 and awarded $866,000 in compensatory damages. And after a post-trial hearing, the court granted C4's request to collect on its lien. Capital City and 83 Freight raise numerous issues on appeal. We affirm in part, reverse in part, and modify in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part and Modified in Part.**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Roland W. Baggot III, Nashville, Tennessee, for the appellants, 83 Freight, LLC; Capital City Construction, LLC; and SureTec Insurance Company.

Beau C. Creson and Evan S. Rothey, Nashville, Tennessee, for the appellee, C4 Sourcing Solutions, LLC.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

In 2017 and 2018, 83 Freight acquired three parcels of land on Byrum Avenue in Nashville, Tennessee, to develop an apartment complex made from customized steel

shipping containers. 83 Freight then hired Capital City to build the project. In turn, Capital City hired C4 to source the containers.

In the end, C4 delivered 63 containers that were integrated into the project, but Capital City paid for only 54 due to alleged manufacturing defects. Consequently, C4 recorded a lien against one of the three parcels of land on which the project was located. 83 Freight later extinguished the lien by obtaining a bond from SureTec Insurance Company.

C4 commenced this action in July 2019 by filing a verified complaint ("the Original Complaint") against Capital City, 83 Freight and SureTec. As amended, the complaint alleged that C4 had a contract with Capital City to source 71 containers that were integrated into 83 Freight's project and that the defendants owed some $220,000. Based on this and other allegations, the complaint asserted claims for breach of contract, violation of the Tennessee Prompt Pay Act, and unjust enrichment. 83 Freight responded by asserting counterclaims to quiet title and for delivery of nonconforming goods under Tennessee's Uniform Commercial Code, Tennessee Code Annotated §§ 47-1-101 to 47-9-809.

But after nearly three years of litigation, C4 filed a Notice of Voluntary Nonsuit and dismissed its action against all three defendants. Thus, Capital City and SureTec were dismissed from the suit. Because 83 Freight had asserted a counterclaim against C4 which remained viable, 83 Freight assumed the role of plaintiff with the sole remaining claim being its claim for nonconforming goods.

### The Countercomplaint

C4 then sought and obtained permission of the court to file a countercomplaint and third-party complaint ("the Countercomplaint"), adding Capital City and SureTec back into the litigation as defendants. This time, C4 asserted claims for breach of contract, promissory estoppel, violation of the Prompt Pay Act, and enforcement of its lien. However, unlike the Original Complaint, which alleged a contract for 71 containers, the Countercomplaint alleged that C4 had a contract to supply 171 containers.

### Motion to Dismiss

Capital City, 83 Freight, and SureTec then filed a motion to dismiss or for judgment on the pleadings, arguing, *inter alia*, that the Countercomplaint did not meet the pleading requirements in Tennessee Rules of Civil Procedure 8.05 and 10.03. They also maintained that the claim for unjust enrichment was barred by C4's claim for breach of contract and that Capital City and SureTec were not properly added as third-party defendants "[b]ecause none of the claims against 83 Freight meet the standard of Rule 13.01 to show that they arise out of the transaction or occurrence that is the subject matter of the 83 Freight's UCC claim." After a hearing, the trial court denied the Motion to Dismiss without discussion. The parties then proceeded to a trial.

After the trial began, the court announced that it was reserving C4's lien claim for a post-trial hearing. The court then heard testimony from five witnesses and admitted some 60 exhibits into evidence. The court then instructed the jury on each count.

In the end, the jury found that 83 Freight did not prove its claim for nonconforming goods but that C4 proved its breach of contract and Prompt Pay Act claims against Capital City. Based on these findings, the jury awarded $866,991 to C4. The jury also found that Capital City acted in bad faith when it violated the Prompt Pay Act. Because the jury found in C4's favor on the contract claim, it did not reach C4's unjust enrichment and promissory estoppel claims.

The trial court confirmed the verdict and entered judgment for C4. Based on the jury's finding of bad faith, the court also held that C4 was entitled to an award of prejudgment interest and an award of its attorney's fees under the Prompt Pay Act. And following further post-trial proceedings, the trial court ruled in favor of C4 on its lien claim and entered a judgment against Capital City and SureTec, jointly and severally, for the full amount of the lien. In total, the court awarded C4 just over $1.3 million in compensatory damages, attorney's fees, and prejudgment interest. Defendants then moved for a new trial, arguing, *inter alia*, that the jury's verdict was unsupported by material evidence. The trial court denied that motion without discussion.

This appeal by Capital City, 83 Freight, and SureTec ("Appellants") followed.

#### ISSUES

The parties raise 16 issues on appeal, which we restate as follows:

1. Whether there was material evidence to support the jury's award of damages.

2. Whether the C4's First Amended Complaint and Second Amended Complaint were admissible at trial.

3. Whether C4 was judicially estopped from alleging a contract for 171 containers.

4. Whether C4's lien was willfully and grossly overstated.

5. Whether the trial court erred by not dismissing C4's alternative claims for unjust enrichment and promissory estoppel.

6. Whether the trial court erred by not requiring the jury to find the existence of a written contract on the jury verdict form.

- 3 -

7. Whether there was material evidence to support the jury's finding of bad faith.

8. Whether the trial court erred by not dismissing the lien claim when the Countercomplaint was not filed under oath.

9. Whether C4 prosecuted its lien claim "with effect" as required by Tennessee Code Annotated §§ 66-11-115(b) and -126(5)(B).

10. Whether the trial court erred by denying C4's motion to dismiss the lien claim when the legal description in the lien described only one of four tracts in the 83 Freight project.

11. Whether the trial court erred by finding that SureTec and Capital City were proper third-party defendants.

12. Whether the trial court erred by bifurcating the lien claim and holding that 83 Freight waived its defenses to the lien.

13. Whether the trial court erred by not limiting the attorney's fee award to the fees incurred in prosecuting the Prompt Pay Act claim.

14. Whether the trial court erred by applying the amended version of Tennessee Code Annotated § 66-34-601.

15. Whether C4's claims were sufficiently pled in accordance with Tennessee Rules of Civil Procedure 8 and 10.

16. Whether C4 is entitled to its attorneys' fees and costs on appeal.

**ANALYSIS**

I. AMOUNT OF DAMAGES

Appellants contend that the jury's award of damages on C4's breach of contract claim was not supported by material evidence because the amount awarded was almost three times the damages proved. Thus, Appellants assert that the trial court should have granted their motion for remittitur.[1]

---

[1] Appellants also argue that the jury failed to follow the trial court's formula for calculating damages and that the trial court erred in not granting a new trial. However, we pretermit these arguments because Appellants failed to cite relevant legal authority in support of their contentions. *See* Tenn. R. App.

- 4 -

"The purpose of assessing damages in the event of a breach of contract is to place the injured party in the same position it would have been in had the contract been fully performed." *Metro. Gov't of Nashville & Davidson Cnty. v. Cigna Healthcare of Tennessee, Inc.*, 195 S.W.3d 28, 35 (Tenn. Ct. App. 2005) (citations omitted). Stated differently, "the injured party is not entitled to profit from the breach or be placed in a better position" than it would have had the contract been performed. *Id.* (citations omitted).

Permissible damages for breach of contract include expectation damages. *See Chambliss, Bahner & Crawford v. Luther*, 531 S.W.2d 108, 110 (Tenn. Ct. App. 1975) (stating that contract claimant is entitled to damages "for the promised performance" (citing Arthur L. Corbin, Corbin on Contracts § 1102 (1964)). "The most common method for awarding expectation damages is to award the injured party the profits it would have made had the contract been completed." *E. Sky Prods., Inc. v. Ram Graphics, Inc.*, No. 01-A-01-9305-CH00215, 1994 WL 642760, at *3 (Tenn. Ct. App. Nov. 16, 1994) (citations omitted). Allowable damages also include consequential damages. *Chambliss*, 531 S.W.2d at 110 (citing Corbin, *supra*, § 1102). Consequential damages are those that "are the normal and foreseeable results of a breach of contract." *Morrow v. Jones*, 165 S.W.3d 254, 259 (Tenn. Ct. App. 2004) (citations omitted).

Generally, "[t]he plaintiff bears the burden of proving damages to such a degree that, while perhaps not mathematically precise, will allow the jury to make a reasoned assessment of the plaintiff's injury and loss." *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 419 (Tenn. 2013). In other words, the damages "must be proved with reasonable certainty." *E. Sky Prods., Inc.*, 1994 WL 642760, at *3 (citing *Am. Bldgs. Co. v. DBH Attachments, Inc.*, 676 S.W.2d 558, 562 (Tenn. Ct. App. 1984); *Black v. Love & Amos Coal Co.*, 206 S.W.2d 432, 435 (Tenn. Ct. App. 1947)).

When the trial court has approved the jury's award of damages, "the appellate courts maintain the statutory authority to suggest or require a remittitur on appeal." *Meals ex rel. Meals*, 417 S.W.3d at 422. However, "the Court of Appeals' review of the verdict and its ability to suggest a remittitur is limited to a review of the record to determine whether the verdict is supported by material evidence." *Id.* As the Tennessee Supreme Court has explained,

> Material evidence is "evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case." An appellate court is required to take "the strongest legitimate view of all the

---

P. 27(7)(A); *Sneed v. Bd. of Pro. Resp. of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").

evidence in favor of the verdict, assume the truth of all evidence that supports the verdict, allowing all reasonable inferences to sustain the verdict, and to discard all countervailing evidence." The material evidence analysis is very deferential to the award by the jury and the judgment of the trial court when it affirms the verdict as the thirteenth juror. "It matters not a whit where the weight or preponderance of the evidence lies under a material evidence review." "It is simply a search of the record to ascertain if material evidence is present to support the verdict." Because the material evidence standard lies at the foundation of the right to trial by jury, if there is material evidence to support a jury verdict, the appellate courts must affirm it.

*Id*. at 422–23 (citations omitted) (first quoting *Knoxville Traction Co. v. Brown*, 89 S.W. 319, 321 (Tenn. 1905); then quoting *Akers v. Prime Succession of Tennessee, Inc.*, 387 S.W.3d 495, 501–02 (Tenn. 2012); then quoting *Hohenberg Bros. Co. v. Missouri Pac. R. Co.*, 586 S.W.2d 117, 119–20 (Tenn. Ct. App. 1979)).

Here, the jury awarded $866,991 to C4 on its breach of contract claim.[2] Thus, under the above authority, we will consider whether there was any evidence from which the jury could find with reasonable certainty that C4 had lost profits and consequential damages in that amount.

In their brief, Appellants direct us to the testimony of C4's owner, Mr. Henderson, as evidence that C4's damages were significantly less than the amount awarded.[3] Mr. Henderson testified that the contract was for 171 containers at a price of $12,515 per container. Sixty-three containers—valued at $788,445—were integrated into the project but C4 was only paid $685,660, leaving an unpaid balance of $102,785.

C4 also introduced two invoices totaling $12,460 for storage fees at the port of entry, which C4 had to pay because of Appellants' alleged failure to make timely payments. And Mr. Henderson testified that C4 incurred additional storage charges of $13,060 and crane

---

[2] The jury's verdict was general and did not distinguish between expectation and consequential damages.

[3] Appellants' brief includes a photo of unknown origin that purportedly shows a chart that, according to Appellants, "reflected [C4's] total damages." There is no citation to the appellate record, but the trial transcript indicates that a chart was used for demonstrative purposes during Appellants' examination of Mr. Henderson. We presume that the photograph shows that chart. But Appellants did not place the chart into evidence, and the photograph is not in the record. Consequently, we will limit our analysis to the testimony of Mr. Henderson. *See* Tenn. R. App. P. 13(c) ("The Supreme Court, Court of Appeals, and Court of Criminal Appeals may consider those facts established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to rule 14.").

rental fees of $4,000 due to Appellants' failure to timely accept some containers upon delivery.

Mr. Henderson also testified that eight of the containers were never shipped. Mr. Henderson testified that C4's cost to transport the containers would have been $6,280 per container and that he was seeking compensation for only his lost profit and the cost of materials and manufacturing, $6,235 per container or $49,880 for all eight. Mr. Henderson also testified that he recovered $4,376 by selling the containers for scrap. Thus, according to Mr. Henderson's numbers, C4 was owed $45,504 for the eight unshipped containers. And Mr. Henderson testified that C4's profit margin was $1,235 per container and, thus, C4 expected a profit of $123,500 for the remaining 100 containers that were never produced or shipped.

In sum, according to Mr. Henderson's testimony and the accompanying exhibits, C4 was owed $301,309 for lost profits and consequential damages. This is far less than the $866,991 awarded by the jury. Still, C4 contends that the record has other evidence that supports the jury's award. For example, C4 points out that Appellants paid only $685,550, leaving "a shortfall of $1,414,430 from the contracted amount." But "[i]n Tennessee, the recovery of lost profits must be based on net profits and not on gross profits." *Am. Bldgs. Co.*, 676 S.W.2d at 563 (citing *Joy Floral Co. v. S. Cent. Bell Tel. Co.*, 563 S.W.2d 190 (Tenn. Ct. App. 1977))). Awarding C4 the difference between what was paid and the total contract amount would result in a windfall to C4. *See Metro. Gov't of Nashville & Davidson Cnty. v. Cigna Healthcare of Tennessee, Inc.*, 195 S.W.3d at 35.

C4 also relies on evidence that "[t]he cost to manufacture the shipping containers skyrocketed as a result of design errors by the [sic] Capital City." In particular, C4 cites Mr. Henderson's testimony that C4 needed to buy more steel, add primer, reassemble several containers, and remove paint due to changes and errors in the specifications from Appellants. C4 also cites Mr. Henderson's testimony that he flew between China and the United States several times during the manufacturing process and that he rented an apartment in China for several months. However, this evidence is not enough to support an award of damages with reasonable certainty. *See Meals ex rel. Meals*, 417 S.W.3d at 419. Although Mr. Henderson testified about the difficulties C4 faced during the manufacturing process, he never testified as to what, if anything, the alleged changes and errors cost C4.[4] And C4 did not present any evidence from which the jury could have determined Mr. Henderson's travel and lodging expenses.

---

[4] Mr. Henderson alluded to a dispute with the factory as to who would be responsible for the added costs, but he never said whether C4 paid any additional amounts.

Still, C4 cites another part of Mr. Henderson's testimony in which he said that the "cost from the [first] factory" was $1,750 or $1,800 and that his "cost at the second factory" was $2,500. C4 says this is evidence that C4's "cost to manufacture" increased by $700 to $750. We respectfully disagree that the cited testimony supports this conclusion. A close reading reveals that Mr. Henderson was referring to the "deposit per container" required by the factories, not his cost of goods. For example, Mr. Henderson said that "[the second] factory did require a little larger deposit."[5]

C4 also cites testimony from Mr. Henderson that C4 incurred storage fees of $100 per container per day while waiting for payment. Mr. Henderson testified,

> A     So at this time—so we have containers arriving, like we said, on that shipping schedule. Payment is due before it gets to the port—same thing that we've always been doing—and they're not paying. So they know that I'm in a situation of I can either clear the containers or I'm paying port storage fees, which are very high.
>
> And you get billed every day because you've cleared customs, and you're not getting your stuff out of port, and it's very expensive. And I'm letting them know you're late on payments. I'm racking up storage fees right now because these goods are sitting here because you haven't paid. Ten containers, $2,000 with storage fees. I think it's a $100 a day per container. Let's say they sat over the weekend, I need the late payments 77,515, which is for ten containers, 7,515. Add 2,000 to it for the storage.

It is clear, however, that Mr. Henderson was simply giving a hypothetical to explain the circumstances that caused C4 to incur the $12,460 in storage fees we have already discussed.

Finally, C4 cites Mr. Henderson's testimony that C4 had to store the eight unshipped containers for several months in China. But the cited testimony does not even assert that C4 had additional storage fees much less quantify what those fees were.

In summary, the record contains material evidence that C4 incurred damages of $301,309 due to Capital City's breach of contract, not $866,991. Accordingly, we conclude that remittitur is appropriate. Thus, we remand this issue and instruct the trial court to modify the award of damages C4 incurred due to Capital City's breach of contract to $301,309.

---

[5] This conclusion is bolstered by another passage of Mr. Henderson's testimony where he said that the price per container included "1,800 for the deposit."

## II. EXCLUSION OF PRIOR PLEADINGS FROM EVIDENCE

Appellants contend that the trial court should have admitted the First and Second Amended Complaints into evidence at trial under Tennessee Rule of Evidence 803(1.2) as an admission by a party opponent. In particular, Appellants contend that the Amended Complaints constitute a sworn declaration by C4 that the contract was for 71 containers rather than 171 containers.

Assuming *arguendo* that the pleadings should have been admitted, we find no reversible error in the trial court's decision. "A trial court's erroneous exclusion of competent evidence will not require reversal . . . if the substance of the excluded evidence got to the jury through another source." *Pankow v. Mitchell*, 737 S.W.2d 293, 298 (Tenn. Ct. App. 1987) (citations omitted). As C4 points out, Appellants cross-examined Mr. Henderson about the fact that C4's earlier pleadings alleged a contract for 71 containers, and Appellants brought up the inconsistency in their closing argument. Thus, we conclude that Appellants are not entitled to appellate relief on this ground.

## III. JUDICIAL ESTOPPEL

Next, Appellants argue that C4 was judicially estopped from alleging a contract for 171 containers in the Countercomplaint because the Original Complaint—which was verified—claimed that the contract was for only 71 containers.

As the Tennessee Supreme Court has explained,

> The doctrine of judicial estoppel exists to "ensure the integrity of the judicial process." It prohibits a party from taking "a position that is directly contrary to or inconsistent with a position previously taken by the party." In Tennessee, however, the doctrine applies "**only when a party has attempted to contradict by oath a sworn statement previously made**." And it applies only when the inconsistent sworn statement concerns an issue of fact.

*Pandharipande v. FSD Corp.*, 679 S.W.3d 610, 621 (Tenn. 2023) (emphasis added) (citations omitted) (first quoting *Kershaw v. Levy*, 583 S.W.3d 544, 548 (Tenn. 2019); then quoting *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 314–15 (Tenn. 2009); then quoting *Kershaw*, 583 S.W.3d at 549).

Here, the Countercomplaint was not verified. Thus, the statements therein cannot form the basis for invoking the doctrine of judicial estoppel. *See id.* Accordingly, we find Appellants are not entitled to appellate relief on this ground.

## IV. AMOUNT OF LIEN

Appellants also contend that the trial court should have dismissed C4's bond claim because the amount stated in C4's Notice of Lien was "willfully and grossly exaggerated." Appellant's argument is based on Tennessee Code Annotated § 66-11-139, which provides:

> If, in any proceeding to enforce the lien provided by this chapter, the court finds that any lienor has willfully and grossly exaggerated the amount for which that person claims a lien, as stated in that person's notice of lien or pleading filed, in the discretion of the court, no recovery may be allowed thereon, and the lienor may be liable for any actual expenses incurred by the injured party, including attorneys' fees, as a result of the lienor's exaggeration.

Tenn. Code Ann. § 66-11-139.

But we conclude that Appellants have waived this issue by not developing a complete legal argument in their brief. Specifically, Appellants' brief does not cite any evidence that C4 acted "willfully."[6] *See* Tenn. R. App. P. 27(a)(7) (requiring an argument setting forth "citations to the authorities and appropriate reference to the record"); *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." (citations omitted)).

## V. PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT CLAIMS

Appellants contend that the trial court should have dismissed C4's unjust enrichment and promissory estoppel claims, but we conclude this issue is moot because the jury did not find Appellants liable on these claims. And Appellants have proffered no reason for concluding that C4's assertion of those claims was prejudicial. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

---

[6] We recognize that this court has addressed the exaggeration defense on only a few occasions. Nonetheless, our research reveals at least two cases that are relevant to the issue. *See Beacon4, LLC v. I & L Invs., LLC*, 514 S.W.3d 153 (Tenn. Ct. App. 2016); *Wimpy v. Holland Bros. Const. Co.*, No. 89-81-II, 1989 WL 119446 (Tenn. Ct. App. Oct. 13, 1989). Appellants do not address either of these cases.

## VI. WRITTEN AGREEMENT

Appellants contend that "the Jury's Verdict on the Prompt Pay Act is unsupported by material evidence" because "at no point was there a finding of fact as to what constitutes the written agreement." We disagree.

As Appellants correctly point out, the Prompt Pay Act gives contractors a claim for payment for work performed "in accordance with the provisions of [a] written contract." *See* Tenn. Code Ann. §§ 66-34-201 and -301; *see also Akers v. Sessions Paving Co.*, No. M2012-02602-COA-R3-CV, 2013 WL 4107622, at \*3 (Tenn. Ct. App. Aug. 13, 2013) ("The Tennessee Prompt Pay Act explicitly applies to *disputes over commercial construction contracts.*" (citations omitted)). At trial, Mr. Henderson testified that a revised proposal embodied the parties' written contract. And when instructing the jury, the trial court said that the jury had to find a written contract between the parties. The jury verdict form, however, asked generally whether C4 proved its breach of contract claim against Capital City or 83 Freight. The jury answered in the affirmative as to Capital City.

Implicit in the jury's verdict is a finding that a written contract existed between Capital City and C4. Because the revised proposal was the only alleged written contract, we also infer that the jury found the revised proposal was the parties' written agreement. *See Johnson v. Tennessee Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 374 (Tenn. 2006) ("[T]he jury is presumed to have followed the instructions of the trial court.").[7] Therefore, we conclude that Appellants are not entitled to appellate relief on this ground.

## VII. BAD FAITH

Next, Appellants contend that the jury's finding of bad faith was not supported by material evidence. We disagree.

"[O]ur courts have reasoned that bad faith involves a knowing or reckless disregard of contractual rights or duties." *Vic Davis Constr., Inc. v. Lauren Eng'rs & Constructors, Inc.*, No. E2017-00844-COA-R3-CV, 2019 WL 1300935, at \*11 (Tenn. Ct. App. Mar. 20, 2019) (citing *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 181 (Tenn. Ct. App. 2001)). "Tennessee courts have recognized in various contexts that the presence of bad faith is a question of fact." *Madden Phillips Const., Inc. v. GGAT Dev. Corp.*, 315

---

[7] We observe that the use of a special verdict form is helpful in complex cases such as this one. *See Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 910 (Tenn. 1999) ("[T]he most effective approach in dealing with multiple claims for relief is to require the jury to respond either to a general verdict form accompanied by special interrogatories or to a special verdict form **that has been prepared to parallel the instructions to the jury on each claim**." (emphasis added)).

S.W.3d 800, 828 (Tenn. Ct. App. 2009) (citations omitted). We review a jury's findings of fact under the material evidence standard. *See* Tenn. R. App. P. 13(d).

It is undisputed that Appellants knowingly withheld payment for nine containers that were delivered and incorporated into the 83 Freight project. Although Appellants have maintained that they did so in good faith, it was up to the jury to decide that fact.

For this reason, we conclude that the record has material evidence to support the jury's finding of bad faith.

## VIII. UNDER-OATH REQUIREMENT

Appellants also argue that C4 did not state a claim for enforcement of its lien because the Countercomplaint was not filed under oath as required by Tennessee Code Annotated § 66-11-126. That statute provides in material part:

> (5)(A) Where a bond has been provided pursuant to . . . § 66-11-142,[8] an attachment on the real property shall not be necessary after the bond has been recorded, and **the claim shall be enforced by a complaint** . . . **filed under oath**, setting forth the facts and describing the real property with process to be served on the obligors on the bond. . . .

Tenn. Code Ann. § 66-11-126 (emphasis added).

Appellants contend that C4 did not "**strictly** comply with this statutory requirement." (Emphasis added). In support, Appellants cite *D.T. McCall & Sons v. Seagraves*, 796 S.W.2d 457 (Tenn. Ct. App. 1990). In *D.T. McCall*, the court noted that "[s]trict compliance with the lien statutes has always been required." *Id*. at 463. That decision was released in 1990. But in 2007, the Tennessee General Assembly amended the lien statute by adding § 66-11-148. *See* Act of May 18, 2007, 2007 Tenn. Pub. Acts ch. 189, § 47. Section 66-11-148 states, "Any document required or permitted to be served, recorded or filed by this chapter that substantially satisfies the applicable requirements of this chapter is effective even if it has **nonprejudicial errors or omissions**." *Id.* (emphasis added).

In *Tri Am Construction, Inc. v. J & V Development, Inc.*, 415 S.W.3d 242 (Tenn. Ct. App. 2011) we held that the failure to file a lien complaint under oath was nonprejudicial. *Id*. at 247. We concluded "that any defects in [the] complaint were

---

[8] Under Tennessee Code Annotated § 66-11-142, liens may be discharged by recording a bond for the full amount of the lien.

nonprejudicial to [the defendant] and fell squarely within the statute's stated parameters of liberal construction to secure the benefits of the chapter." *Id*. at 248.

Here, it is undisputed that C4 did not file the Countercomplaint under oath. But Appellants have articulated no prejudice suffered by C4's failure to do so. Accordingly, we find no error in the trial court's decision to let C4 go forward on its lien enforcement claim.

## IX. FAILURE TO PROSECUTE LIEN CLAIM "WITH EFFECT"

Appellants also contend that the trial court should have dismissed C4's lien claim because C4 did not prosecute the claim "with effect" as required by the Prompt Pay Act of 1991.

Section 66-11-126(5)(B) of the Prompt Pay Act provides:

Where a lien is enforced pursuant to this subdivision (5), or after suit is commenced on a bond provided pursuant to § 66-11-124, § 66-11-136, or § 66-11-142, the plaintiff shall, in case of failure to prosecute the suit with effect, pay the defendant or defendants all costs adjudged against the defendant or defendants and all the damages the defendant or defendants may sustain by the wrongful assertion of the lien . . . .

Tenn. Code Ann. § 66-11-126.

Appellants contend that C4 did not prosecute its enforcement claim "with effect" because C4 voluntarily dismissed the claim before reasserting it in the Countercomplaint. On the other hand, C4 argues this statute does not allow dismissal of an action and is, instead, simply a fee-shifting statute that applies when the defendant has prevailed against a lien enforcement claim. We agree with C4.

Contrary to Appellants' contention, "prosecute with effect" has long been used in the context of bond claims as a term of art that means "with success." For example, Tennessee Code Annotated § 20-12-133 states that people proceeding *in forma pauperis* are responsible for paying court costs if they fail "to prosecute the action or suit with effect." *See Washington v. Tennessee DOC*, No. 01A-01-9603-CH-00131, 1996 WL 334359, at *2 (Tenn. Ct. App. June 19, 1996) (holding that party proceeding *in forma pauperis* was responsible for court costs because he did not prevail in the action); *see also Crane v. Buckley*, 203 U.S. 441, 447 (1906) ("What is meant by prosecuting his appeal to effect? It is an expression substantially equivalent to prosecuting his appeal with success; to make substantial and prevailing his attempt to reverse the decree or judgment awarded against him."). *Cf. Shelton Dental Assocs. v. LaFevre*, 767 S.W.2d 665, 667 (Tenn. Ct. App. 1989) (holding the phrase "prosecution of the appeal" did "not appear to require that the appeal be prosecuted successfully or with effect").

- 13 -

Because C4 did not fail to prosecute its lien claim with effect, we conclude that Tennessee Code Annotated § 66-11-126(b) does not apply.

## X. DESCRIPTION OF PROPERTY

Appellants attack the validity of the Notice of Lien because it allegedly has a defective legal description of the attached property. But we conclude that Appellants waived this issue by not developing a complete legal argument. *See Sneed*, 301 S.W.3d at 615 ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").

## XI. ADDITION OF THIRD-PARTY DEFENDANTS

Appellants argue that SureTec and Capital City were never properly added as third-party defendants under Tennessee Rule of Civil Procedure 14.01, which provides: "At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Tenn. R. Civ. P. 14.01.

The trial court's order, however, states that Capital City and SureTec were joined as additional parties under Tennessee Rule of Civil Procedure 13.08, which provides:

> When the presence of parties other than those to the original action is required for the granting of complete relief in the determination of a counterclaim or cross-claim, the court may order them to be brought in as defendants as provided in these rules, if jurisdiction of them can be obtained.

Appellants do not address the application of Rule 13.08 in their briefs. For this reason, we conclude that Appellants have waived the issue of whether the trial court erred by joining SureTec and Capital City. *See Sneed*, 301 S.W.3d at 615.

## XII. BIFURCATION OF CLAIMS AND WAIVER OF DEFENSES

### A. Bifurcation of Claims

Appellants argue that the trial court erred in "bifurcating" the lien claim from the others because "there was no indication in this case that bifurcation of the issues was necessary to avoid juror confusion, protect a party from prejudice, or promote judicial efficiency" and "[t]he issues of liability on the Bond were interwoven with the other issues in this case."

We conclude that Appellants waived this issue by not developing a complete legal argument with citations to the record and relevant authority. *See* Tenn. R. App. P.

- 14 -

27(a)(7)(A); *Sneed*, 301 S.W.3d at 615. We also note that Appellants have not articulated how they were harmed by the trial court's decision. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). In other words, they did not show "why appellate relief is required." *See* Tenn. R. App. P. 27(7)(A) (requiring argument setting forth "the reasons why the contentions require appellate relief").

## B. Waiver of Defenses

Appellants also contend that the trial court erred by holding that Appellants waived all defenses to the lien by executing a bond with SureTec.

Tennessee Code Annotated § 66-11-142(a) permits any person to record a bond to indemnify against a lien and states that "[t]he recording by the register of a bond to indemnify against a lien **shall operate as a discharge of the lien**." (Emphasis added). In *Travelers Casualty & Surety Co. of America v. Lawyer's Title Insurance Corp.*, No. E2007-01138-COA-R3-CV, 2008 WL 1958338 (Tenn. Ct. App. May 6, 2008), we cited this language and held that the recording of a bond under § 66-11-142 constitutes a waiver of "any issue of validity, extent, priority or amount" of the lien.[9] *Id.* at *13.

Appellants contend that the trial court's determination was error because the bond states: "By posting this Bond, the Principal and Surety do not release or waive, and hereby expressly reserve, all defenses they now have or may hereafter acquire to challenge the validity of the Lien and the Lien Claimant's claim to payment." In support, Appellants cite *Raley v. Brinkman*, 621 S.W.3d 208, 230 (Tenn. Ct. App. 2020) for the proposition that "contractual rights are not waivable, conditions are."

We find Appellants' reliance on *Raley* misplaced. In *Raley*, we were considering whether one business partner waived the other's obligation to make a capital contribution under an operating agreement. *Id*. at 229. But here, the language relied on by Appellants appears in a bond issued by SureTec to 83 Freight, which does not supersede or nullify the fact, as we explained in *Travelers*, that the recording of a bond to indemnify against a lien

---

[9] Tennessee Code Annotated § 66-11-142 provides:

> (a) If a lien, other than a lien granted in a written contract, is fixed or is attempted to be fixed by a recorded instrument under this chapter, any person may record a bond to indemnify against the lien. Such bond shall be recorded with the register of deeds of the county in which the lien was filed . . . . The recording by the register of a bond to indemnify against a lien shall operate as a discharge of the lien . . . .

constitutes a waiver of "any issue of validity, extent, priority or amount" of the lien. *See Travelers*, 2008 WL 1958338, at \*13.

For this reason, we conclude that Appellants are not entitled to appellate relief on this issue.

## XIII. APPORTIONMENT OF ATTORNEY FEE AWARD

Next, Appellants contend that the amount awarded for C4's attorney's fees was excessive because the award included amounts that C4 incurred in prosecuting claims for which no fee award was allowed.

A determination of the amount of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. *Thomson v. Genesis Diamonds, LLC*, 661 S.W.3d 121, 130 (Tenn. Ct. App. 2022) (citing *Kline v. Eyrich,* 69 S.W.3d 197, 203 (Tenn. 2002); *Shamblin v. Sylvester*, 304 S.W.3d 320, 331 (Tenn. Ct. App. 2009)). We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision. *Id*. (citations omitted).

The abuse of discretion standard does not allow this court to substitute our judgment for that of the trial court, *Williams v. Baptist Mem'l Hosp.,* 193 S.W.3d 545, 551 (Tenn. 2006); *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn. 1998), and we will find an abuse of discretion only if the court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

C4 asserted claims for breach of contract, violation of the Prompt Pay Act, enforcement of its lien, unjust enrichment, and promissory estoppel. C4 prevailed on its contract, lien, and Prompt Pay claims, but only the latter entitled it to an award of attorney's fees.[10] Still, the trial court declined to allocate the fees between C4's claims and found that an award of all fees was appropriate. In doing so, the court agreed with C4's argument that "the Prompt Pay Act and contract/bond claims cannot be disentangled or otherwise separated from a billing standpoint," i.e., "the legal fees incurred to pursue both claims were necessarily the same."

When a prevailing party has the right to an award of fees under one claim but not others, an award of all fees is appropriate when the claims "involve a common core of

---

[10] The Prompt Pay Act entitles a prevailing party to reasonable attorney's fees if "the nonprevailing party acted in bad faith." Tenn. Code Ann. § 66-34-602. We have already affirmed the jury's finding of bad faith.

facts" or are "based on related legal theories." *Crescent Sock Co. v. Yoe*, No. E2015-00948-COA-R3-CV, 2016 WL 3619358, at *8 (Tenn. Ct. App. May 25, 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983)); *accord G.T. Issa Constr., LLC v. Blalock*, No. E2020-00853-COA-R3-CV, 2021 WL 5496593 (Tenn. Ct. App. Nov. 23, 2021). Here, C4's Prompt Pay and contract claims involved a common core of facts: Each sought recovery for Appellants' failure to pay as agreed in the contract.

For this reason, and finding no abuse of discretion in the amount of the award, we affirm the trial court's award of attorney's fees.

## XIV. PREJUDGMENT INTEREST

Appellants contend the trial court erred by awarding prejudgment interest at a rate of 1.5% per month. On this point, we agree with Appellants.

As originally enacted, the Prompt Pay Act of 1991 stated that "[a]ny payment not made in accordance with this chapter shall accrue interest, from the date due until the date paid at the rate of interest for delinquent payments **provided in the written contract**." *See* Prompt Pay Act of 1991, 1991 Tenn. Pub. Acts ch. 45, § 1 (emphasis added). The Act was amended in 2000 to add "or, if no interest rate is specified in a written contract, **at the rate specified in § 47-14-121**." *See* Act of May 17, 2000, 2000 Tenn. Pub. Acts ch. 712, § 1 (emphasis added). The Act was changed again in 2020 to its present version:

> Any payment not made in accordance with this chapter accrues interest, from the date due until the date paid, at the rate of interest for delinquent payments provided in written contract or, if no interest rate is specified in a written contract, **then one and one-half percent (1.5%) per month**.

*See* Act of June 22, 2020, 2020 Tenn. Pub. Acts ch. 749, § 29 (emphasis added) (codified at Tenn. Code Ann. § 66-34-601). Importantly, the 2020 amendment specified that it would "take effect July 1, 2020, the public welfare requiring it, and appl[y] to actions occurring and contracts entered into, amended, or renewed **on or after that date**." *Id*. § 42 (emphasis added).

The parties entered their contract in December 2018, before the 2020 amendment took effect. Thus, the 2000 version of the statute applies. Accordingly, we reverse the trial court's decision on this issue and remand for a recalculation of the prejudgment interest to which C4 is entitled using the interest rate specified in Tennessee Code Annotated § 47-14-121.

XV. MOTION TO DISMISS

A. Rule 8.01

Appellants argue that the trial court should have dismissed C4's breach of contract claim because the Countercomplaint did not specify whether C4's alleged contract was with Capital City or 83 Freight. Appellants contend this violates Tennessee Rule of Civil Procedure 8.01, which provides:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

Tenn. R. Civ. P. 8.01.

We find Appellants' argument unpersuasive. The Countercomplaint asserts a breach of contract claim against Capital City "and/or" 83 Freight, and the Rules of Civil Procedure allow parties to assert alternative claims "regardless of consistency." Tenn. R. Civ. P. 8.05(2). Further, when read as a whole, the Countercomplaint clearly alleges that Capital City had a contract with 84 Freight. Thus, Appellants are not entitled to appellate relief on this ground.

B. Rule 8.05

Next, Appellants contend that the Countercomplaint did not state a claim for violation of the Prompt Pay Act because C4 failed "to clearly identify the 'ordinance or regulation' as required by Rule 8.05(1)." Likewise, Appellants contend that the Countercomplaint did not state a claim for enforcement of the lien because C4 did not specify whether it was seeking relief as a prime contractor under Tennessee Code Annotated § 66-11-126(1) or as a remote contractor under Tennessee Code Annotated § 66-11-126(2).

> Tennessee Rule of Civil Procedure 8.05 provides in material part:

> Every pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either **specifically refer** to the statute or **state all of the facts** necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged. . . . The manner in which violation of any statute, ordinance or regulation is claimed shall be set forth.

Tenn. R. Civ. P. 8.05(1) (emphasis added).

- 18 -

The Counatercomplaint alleged that "Capital City's refusal to pay C4 Sourcing is a violation of the Tennessee Prompt Pay Act of 1991." We agree with Appellants that this allegation does not specifically refer to the statutory section that Capital City purportedly violated. However, failing to follow Rule 8.05 "does not necessarily require dismissal in the first instance." *Collier v. Slayden Bros. P'ship of Waverly, Humphreys Cnty.*, 712 S.W.2d 106, 108 (Tenn. Ct. App. 1985). "[A] pleading should not be dismissed, no matter how inartfully worded, if it states a good cause of action." *Id.* (citations omitted).

We find that the Countercomplaint states a good cause of action for violation of the Prompt Pay Act of 1991 and for enforcement of the lien. C4's Prompt Pay claim "reassert[ed] the preceding paragraphs." Those paragraphs incorporated by reference a copy of C4's Prompt Pay Act Notice, attached as Exhibit F, which specifically stated that C4 was seeking "all relief provided under Tenn. Code Ann. § 66-34-602."[11]

Still, Appellants contend that it is not clear whether C4 was seeking relief as a "prime contractor" or a "remote contractor" under § 66-34-602. We disagree.

Section 66-34-102 of the Prompt Pay Act incorporates by reference the definitions in § 66-11-101, which defines "remote contractor" as "a person . . . who provides work or labor or who furnishes material, services, equipment or machinery in furtherance of any improvement under a contract with a person **other than an owner**." (Emphasis added). As stated, the Countercomplaint alleges that C4 had a contract with Capital City and that Capital City had a contract with 83 Freight. Thus, the gravamen of the Countercomplaint is that C4 was seeking relief under § 66-34-602 as a remote contractor.

For these reasons, we conclude that the Countercomplaint contained sufficient reference to the statute on which C4's Prompt Pay and lien enforcement claims were based.

### C. Rule 10.03

Appellants also assert that the trial court should have dismissed C4's breach of contract claim because C4 did not attach a copy of the alleged contract to the Countercomplaint as required by Tennessee Rule of Civil Procedure 10.03.

---

[11] Moreover, "[c]omplaints should not be dismissed because of ambiguity, indefiniteness or uncertainty where there exists the remedy of obtaining a more definite statement." *Collier*, 712 S.W.2d at 108 (citations omitted). If Appellants were truly at a loss as to the legal basis for C4's claim, they could have sought clarification under Tennessee Rule of Civil Procedure 12.05, which permits motions for a more definite statement, pointing out "the defects complained of and the details desired." *Id.* (quoting Tenn. R. Civ. P. 12.05).

Rule 10.03 provides, "Whenever a claim or defense is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an exhibit . . . ." Tenn. R. Civ. P. 10.03.[12] We conclude that C4 met this requirement by attaching the revised proposal that C4 alleged was the parties' contract.

## XVI. APPELLATE ATTORNEY'S FEES

Lastly, C4 asks for an award of its attorney's fees incurred on appeal.

The Prompt Pay Act provides for an award of "[r]easonable attorney's fees . . . against the nonprevailing party if the nonprevailing party acted in bad faith." Tenn. Code Ann. § 66-34-602(d). This provision includes the award of appellate attorney fees. *Beacon4, LLC*, 514 S.W.3d at 212. Having determined that the jury's finding of bad faith is supported by material evidence, we further determine that an award of reasonable appellate attorney's fees is appropriate. Accordingly, on remand, the trial court must make a determination of the proper amount of reasonable fees incurred by C4 during the appellate process and enter judgment accordingly. *See id.*

## IN CONCLUSION

The judgment of the trial court is affirmed in part, reversed in part, and modified in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Capital City, 83 Freight, and SureTec.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[12] Rule 10.03 contains exceptions to this rule, none of which are at issue here.